IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHEL WEATHERS as Administrator of the Estate of Kellen Weathers, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 02 C 3611 |
| v. | )<br>)<br>) |
| CITY OF CHICAGO, OFFICER BRODERICK JONES, OFFICER ANDRE GREEN, and OFFICER ERIC LEE,[1] | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Ethel Weathers filed a seven-count First Amended Complaint against Defendants Officer Broderick Jones ("Jones"), Officer Andre Green ("Green"), and Officer Eric Lee ("Lee") alleging false arrest, the denial of medical care, and excessive force, along with state tort claims and a policy claim against the City of Chicago. The Court dismissed the policy claim in Count III against the City pursuant to the parties' stipulation. Also, the Court dismissed the state law claims in Counts IV through VII as untimely. Before the Court is Defendants Jones and Green's Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' Motion for Partial Summary Judgment.

---

[1] The Court dismisses Defendant Officer Eric Lee with prejudice from this lawsuit because Plaintiff failed to substitute another party for Officer Lee after Defendants filed the Suggestion of Death on December 9, 2002, notifying the Court that Officer Lee is deceased. *See* Federal Rule of Civil Procedure 25(a)(1); *Russell v. City of Milwaukee*, 338 F.3d 662, 664 (7th Cir. 2003) (substitution must occur within 90 days of Suggestion of Death).

## I. NORTHERN DISTRICT OF ILLINOIS LOCAL RULES

Defendants contend that the Plaintiff has failed to properly deny their Northern District of Illinois Local Rule 56.1(a)(3) Statement of Facts. Therefore, the Court turns to the rules governing the parties' summary judgment filings before addressing the merits of the case. When determining summary judgment motions, the Court derives background facts from the parties' Northern District of Illinois Local Rule 56.1 statements. The Local Rules provide parties with specific details as to how litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials. *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D.Ill. 2000).

The types of evidentiary material available to support Rule 56.1 Statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Id.* at 584. Under Federal Rule of Civil Procedure 56(e), supporting and opposing affidavits must show that the affiant is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible in evidence. *Markel v. Board of Regents of the Univ. of Wisconsin,* 276 F.3d 906, 912 (7th Cir. 2002). Furthermore, an affidavit or declaration that is not sworn or certified under penalty of perjury cannot be considered as evidence because it fails to meet Rule 56(e)'s requirements. *See id.; Woods v. City of Chicago,*

2

234 F.3d 979, 998 (7th Cir. 2000) (citing 28 U.S.C. § 1746).

Finally, statements and responses that do not properly cite to the record are subject to the Court's discretion as to their admission. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Statements that are not contested are deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The Court also reminds the parties that when citing to the record in their legal memoranda, they are required to cite to the numbered paragraphs of their Local Rule 56.1 Statements, not to the underlying parts of the record. *See Malec*, 191 F.R.D. at 586. With these principles in mind, the Court turns to the relevant facts of this case.

## II. BACKGROUND FACTS

Plaintiff Ethel Weathers is the Administrator of the Estate of Kellen Weathers and has brought this lawsuit against Chicago Police Officers Jones and Green alleging that the Officers violated Kellen Weathers' federal constitutional rights. (R. 53-1, Def.'s Rule 56.1 Statement, ¶ 1.) Specifically, the claims in Plaintiff's First Amended Complaint at issue include false arrest, denial of medical treatment, excessive force causing physical injuries, and excessive force causing death. (*Id.*)

On May 27, 2001, Carmello Weathers, Ricky Anderson, Malcolm Anderson, and others were standing in the 5900 block of South May Street in Chicago, Illinois. (*Id.* ¶ 3; R.57-1, Pl.'s Rule 56.1 Statement Add'l. Facts, ¶ 1) Kellen Weathers drove up to the 5900 block of South May and joined the others standing there. (Pl.'s Stmt. ¶ 2; Def.'s Stmt. ¶ 6.) The 5900 block of South May Street is a high crime area where narcotics are sold. (Def.'s Stmt. ¶ 4; Pl.'s Stmt., Ex. V, S. Coleman Dep. at 12.) In fact, Kellen Weathers' brother was shot to death on the same block of South May Street ten days before Kellen Weathers died. (Def.'s Stmt. ¶ 4.)

On May 27, 2001, Chicago Police Officers Green, Jones, and Lee were on duty, working in plain clothes, and driving an unmarked police car with a municipal "M" plate. (Def.'s Stmt. ¶ 5; Pl.'s Stmt. ¶ 8.) Several minutes after Kellen Weathers' arrival to the area, Officers Green, Jones, and Lee drove down South May Street and saw a group of men standing together who appeared to be gambling. (Def.'s Stmt. ¶ 6, Pl.'s Stmt. ¶ 8.) Weathers was standing with this group of men. (Def.'s Stmt. ¶ 6.)

As the police car pulled near, Officer Jones asked the group of men to "come here." (*Id.* ¶ 7; Pl.'s Stmt. ¶ 14.) All of the men in the group followed Officer Jones' order except for Kellen Weathers, who started walking toward the gangway of 5934 South May Street. (Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶¶ 12, 94.) Emerging from the gangway seconds later, Weathers began to run in the opposite direction from the police. (Def.'s Stmt. ¶ 8.) Officers Jones and Lee chased Weathers down the block, then tackled and handcuffed him. (Def.'s Stmt. ¶ 9; Pl.'s Stmt. ¶¶ 19, 20.) Meanwhile, Officer Green ordered the other men to stand near the police car, where he patted them down. (Def.'s Stmt. ¶ 10.) Green stayed near the police car during Officers Jones and Lee's encounter with Weathers. (*Id.*) Eventually, the Officers released everyone but Weathers. (Pl.'s Stmt. ¶ 38.)

After subduing Weathers, Officers Jones and Lee walked him back to the police car. (Def.'s Stmt. ¶ 13.) Officer Lee patted down Weathers and ran a check on his name. (Pl.'s Stmt. ¶¶ 34, 40.) The Officers then placed Weathers in the back seat of the police car. (*Id.* ¶ 39.) Officers Jones and Lee searched the area around 5934 South May Street for drugs, but did not recover any narcotics or weapons. (*Id.* ¶¶ 41, 42; Def.'s Stmt. ¶ 14.) The Officers then released Weathers approximately 20 minutes after they placed him in the police car. (Pl.'s Stmt. ¶ 43.)

Further, the Officers did not arrest Weathers or charge him with a crime. (Def.'s Stmt. ¶ 14.)

During their encounter with Weathers, the Officers asked Weathers if he had any drugs on him. (Def.'s Stmt. ¶ 11.) Weathers continually denied that he had any drugs in his possession or that he had any drugs in his mouth. (Def.'s Stmt. ¶ 12; Pl.'s Stmt. ¶ 16.) At one point, he told the Officers that he was chewing gum. (Def.'s Stmt. ¶ 12.) In addition, no one saw the Officers put anything into Weathers' mouth or saw drugs coming out of Weathers' mouth. (*Id.* ¶ 17.) Weathers never requested medical assistance from the Officers and he never told the Officers that he had a serious medical condition. (*Id.* ¶ 19.)

After the Officers uncuffed and released Weathers, he sat with some friends on a nearby porch. (*Id.* ¶ 15.) When the police departed, Weathers began to feel ill. (*Id.* ¶ 23.) Eventually, Weathers told several friends that he had swallowed crack cocaine. (*Id.* ¶ 22.) After Weathers began to feel ill, and with the assistance of friends, he walked to the local grocery store where his friends tried to get him to drink milk to help him throw-up. (*Id.* ¶ 23.) A neighbor called an ambulance. (*Id.* ¶ 24.) Shortly thereafter, paramedics arrived and rendered aid to Weathers and then transported him to a hospital. (*Id.*) The Cook County Medical Examiner who performed Weathers' autopsy determined that Weathers' cause of death was cocaine intoxication. (*Id.* ¶ 25; Pl.'s Stmt. ¶ 48.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court considers the evidentiary record in a light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

## III. ANALYSIS

### A. False Arrest

To prevail on a Fourth Amendment claim of false or unlawful arrest, a plaintiff must establish that the police arrested him without probable cause. *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003). Here, Plaintiff contends that the Officers arrested Kellen Weathers without probable cause. Defendants, on the other hand, argue that the Officers' brief investigatory detention of Weathers did not amount to an arrest.

Because Weathers was initially detained pursuant to an investigative stop, the Court first must determine whether the Officers had a reasonable, articulable suspicion to justify their detention of Weathers under *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a *Terry* stop is lawful depends upon the Officers' ability to produce facts giving rise to a reasonable suspicion that a person has been, is, or is about to engage in criminal activity. *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004). When evaluating the reasonableness of a *Terry* stop, the Court examines the totality of the circumstances known to the Officers at the time of the stop. *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002).

6

Here, it is undisputed that the Officers drove down the 5900 block of South May Street, which is a high crime area, and observed a group of men engaged in what the Officers believed to be gambling. When Officer Jones called the men over to the police car, everyone complied except Kellen Weathers. Weathers walked to a nearby gangway and then ran from the Officers. Officers Jones and Lee ran after Weathers, subdued him, patted him down, searched the area for contraband, questioned Weathers, and ran a name check. The Officers then released Weathers without charging him with a crime.

Based on the totality of the circumstances known to the Officers at the time of the *Terry* stop, the Court concludes that the Officers had a reasonable suspicion that Weathers had engaged, was engaging, or was about to engage in a criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (suspect fleeing high crime area upon seeing police officers is sufficient to justify *Terry* stop). In *Wardlow*, the Supreme Court articulated that a stop based on an occurrence in a high crime area was one of many relevant considerations under *Terry*. *Id.* at 124 (officers not required to ignore relevant characteristics of location). The *Wardlow* Court also recognized that a suspect's unprovoked flight from the police is suggestive of wrongdoing. *Id.* Based on *Wardlow*, this Court concludes that Weathers' unprovoked[2] flight from the Officers coupled with what appeared to be the criminal activity of gambling in a high crime area is a reasonable basis for a *Terry* stop.

Plaintiff's contention that the people standing on the 5900 block of South May Street were not actually gambling misses the point. The facts in the record indicate that it appeared to

---

[2] Plaintiff argues that the Officers provoked Weathers to flee because they drew their guns. This argument is not supported by the record.

7

the Officers that the men were gambling. Under *Terry*, police officers may conduct an investigatory stop based on a reasonable suspicion that a person has been, is, or is about to engage in criminal activity. *Johnson*, 383 F.3d at 542. In other words, police officers are not required to witness actual crimes before initiating an investigatory stop. *See Wardlow*, 528 U.S. at 126 (*Terry* decision recognized risk that officers may stop innocent people).

Next, the Court examines whether the Officers' investigative detention of Weathers was reasonable in scope or if it became a de facto arrest. No bright line exists to determine when a legitimate *Terry* stop evolves into an arrest without probable cause. *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004). In *Stewart*, the Seventh Circuit articulated, "[t]he permissible scope of a *Terry* stop has expanded in recent years to include the use of handcuffs and temporary detentions in squad cars." *Id.* For example, in *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995), the Seventh Circuit concluded that a *Terry* stop did not become an arrest even though the police officers drew their weapons and detained a suspect in a squad car for over an hour.

Based on the totality of the circumstances, the Court concludes that the Officers' detention of Weathers did not evolve into an arrest without probable cause. The record indicates that the Officers detained Weathers for approximately 20 minutes. The Officers patted down Weathers, searched for contraband, questioned Weathers, and ran a name check. The Officers then released Weathers without charging him with a crime. *See United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (rehearing en banc) ("person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot"). Because the lawful *Terry* stop did not become an arrest without probable cause, the Court grants

8

Defendants' Motion for Summary Judgment as to Plaintiff's false arrest claim in Count I.

## B. Failure to Provide Medical Care

Next, Plaintiff argues that the Officers failed to provide medical care after he ingested crack cocaine. The Eighth Amendment protects prisoners from the deliberate indifference to a serious injury or medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Due Process Clause of the Fourteenth Amendment extends this Eighth Amendment right to pre-trial detainees. *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003). To establish "deliberate indifference" a plaintiff must show that (1) he suffered from an objectively serious medical condition, and (2) the officials subjectively knew of and disregarded his needs. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Palmer,* 327 F.3d at 594. Negligence or gross negligence on the part of officials is not sufficient for liability, instead an official must act in an intentional or criminally reckless manner. *Farmer,* 511 U.S. at 837; *Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir. 2001).

The Court turns to the subjective prong of the test, namely, whether the Officers subjectively knew that Weathers ingested crack cocaine and nonetheless disregarded his medical needs. The facts reveal that the Officers did not see Weathers ingest crack cocaine. Further, it is undisputed that Weathers repeatedly denied swallowing any drugs. In fact, Weathers told the Officers he was chewing gum after they asked him whether he had drugs on him or if he had drugs in his mouth. Weathers never requested medical assistance from the Officers and he never told the Officers that he had a serious medical condition. Further, the evidence indicates that Weathers began to exhibit the physical symptoms of ingesting cocaine after the Officers left the area. As such, there were no visible signs that Weathers was in medical distress during his

9

encounter with the Officers. Accordingly, Plaintiff cannot establish that the Officers subjectively knew of and disregarded Weathers' medical needs. *See Farmer,* 511 U.S. at 834.

Nonetheless, Plaintiff argues that Officers Jones and Lee should have known that Weathers swallowed crack cocaine because it has a distinctive smell. This argument fails because negligence cannot be a basis for a claim of deliberate indifference. *See Chapman,* 241 F.3d 845. Accordingly, because there is no evidence in the record that the Officers acted in an intentional or criminally reckless manner, *see Chapman,* 241 F.3d at 845, the Court grants Defendants' Motion for Summary Judgment as to Count II of the First Amended Complaint.

### C. Excessive Force

#### 1. Claims Against Officer Green

For an individual to be liable under Section 1983, he must have participated directly in the constitutional violation. *See Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003). In other words, "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). A defendant may be personally liable if he knows about the conduct and has either facilitated it, approved it, or condoned it. *See Hildebrandt v. IDNR,* 347 F.3d 1014, 1039 (7th Cir. 2003). Therefore, Officer Green cannot be held liable if he did not have any personal involvement in Plaintiff's allegations of excessive force causing physical injury and death.

The record reflects that Officer Green had no physical contact with Weathers. Instead, he got out of the police car and patted down the other men who were gathered on the 5900 block of South May Street. Also, Officer Green remained in the vicinity of the police car while Officers

Jones and Lee chased Weathers on foot. There is no evidence in the record that Officer Green knew about Officers Jones' and Lee's conduct while they encountered Weathers after the foot chase. In sum, Officer Green did not participate in any alleged constitutional deprivation, and thus he cannot be held liable for the use of excessive force resulting in either injury or death. Therefore, the Court grants Defendants' Motion for Summary Judgment as to the excessive force claims under Count I pertaining to Officer Green.

### 2. Claims Against Officer Jones[3]

Based on the elements of negligence, Defendants argue that Plaintiff's excessive force claim requires proof that Officer Jones' alleged wrongful conduct was the proximate cause of Weathers' death. Although Section 1983 creates "a species of tort liability" in favor of persons who are deprived their constitutional rights, *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306-08, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), Defendants have not provided the Court with any case law analyzing proximate cause in the context of an excessive force claim.

In any event, it is undisputed that Weathers died of cocaine intoxication. It is also undisputed that no one saw the Officers put anything into Weathers' mouth or saw drugs coming out of Weathers' mouth. Further evidence indicates that although the Officers searched for drugs and other contraband, none was found. In addition, Weathers denied that he had any drugs in his possession or that he had put drugs in his mouth.

Again, an official cannot be held liable under Section 1983 unless he has personal involvement in a constitutional deprivation. *See Palmer*, 327 F.3d at 594. In other words,

---

[3] Excluded from Defendants' Motion for Partial Summary Judgment is the excessive force claim causing physical injury against Officer Broderick Jones.

11

Officer Jones must have participated in or caused Weathers' death by cocaine intoxication. *See Vance*, 97 F.3d at 991. Here, it is undisputed that not only was there no evidence of drugs on or around Weathers, Officer Jones did not put any drugs in Weathers' mouth. Further, there is no evidence to support the conclusion that Officer Jones facilitated Weathers' death or that Officer Jones approved of or condoned Weathers swallowing crack cocaine. *See Hildebrandt*, 347 F.3d at 1039.

Because Officer Jones did not participate or cause Weathers' death, he cannot be held liable for the use of excessive force resulting in death. Therefore, the Court grants Defendants' Motion for Summary Judgment as to the excessive force claim causing death against Officer Jones.

## CONCLUSION

For these reasons, the Court grants Defendants' Motion for Partial Summary Judgment.

Dated: January 31, 2005

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**